FILED
2014 Feb-14  AM 09:48
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RUSTY A. SAWYERS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:12-cv-3610-AKK** |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Rusty A. Sawyers brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court has reviewed the Appeals Council's decision, which has become the decision of the Commissioner. For the reasons stated below, specifically the Appeals Council's reliance exclusively on the Grids to determine that a significant number of jobs existed in the national economy that Sawyers could have performed prior to April 24, 2008, the Commissioner's decision is **REMANDED** for further proceedings consistent with this opinion.

## I. Procedural History

Sawyers filed his applications for Title II disability insurance benefits and Title XVI Supplemental Security Income on May 20, 2008, alleging a disability onset date of June 23, 2006 due to the lingering effect of injuries he sustained in a 1999 car accident.[1] (R. 139, 145, 198). After the SSA denied his applications on June 13, 2008, Sawyers requested a hearing. (R. 77–81, 85–86). At the time of the hearing on July 1, 2010, Sawyers was 33 years old, had a high school diploma, and past relevant medium skilled work as an auto mechanic and light skilled work in a salvage yard. (R. 38, 41, 61, 139). Sawyers has not engaged in substantial gainful activity since June 23, 2006. (R. 8).

The Administrative Law Judge (ALJ) granted Sawyers' claim in part on July 26, 2010, finding him disabled as of October 20, 2009. (R. 16, 30). Sawyers sought Appeals Council review, contesting the ALJ's conclusion regarding the date on which he became disabled and arguing that the SSA should reopen a previously-filed disability claim. (R. 12–14). On August 15, 2012, the Appeals Council issued a decision changing Sawyers' disability onset date to April 24, 2008. (R. 2, 9).  The Appeals Council's decision was the final decision of the

---

[1] Sawyers alleged he could not work due to back and foot injuries he sustained in the accident and ongoing pain stemming from those injuries. (R. 198). The accident also left him blind in his left eye. *Id.*

Commissioner. (R. 2). Sawyers then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3), contending that he is due benefits retroactive to June 23, 2006. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the Appeals Council's decision[2], *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the Appeals Council applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.

---

[2] In his brief, Sawyers challenges the decision of the ALJ, rather than that of the Appeals Council. *See* doc. 11, *passim*. This court, however, is limited to reviewing the "final decision of the Commissioner of Social Security," 42 U.S.C. § 405(g), which in this case is the Appeals Council's decision. (R. 2). *See also Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998) (stating that "[w]hen the Appeals Council grants review, the Appeals Council decision is reviewable as the final decision of the Secretary"). Therefore, the court will construe Sawyers' challenges as applying to the Appeals Council's decision.

(citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the Commissioner's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Sawyers had not engaged in substantial gainful activity since his

alleged onset date and therefore met Step One. (R. 23). Next, the ALJ acknowledged that Sawyers' severe impairments of status/post calcaneal fracture and osteomyelitis on his right foot, status/post fusion of L2-L5 for compression fracture, borderline intellectual functioning, and depression met Step Two. (R. 23–24). The ALJ then proceeded to the next step and found that prior to October 20, 2009, Sawyers did not satisfy Step Three because he "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 24). Although the ALJ answered Step Three in the negative regarding the period prior to October 20, 2009, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that:

> beginning on October 20, 2009, the date [Sawyers] became disabled,[3] [Sawyers] has the residual function capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can lift/carry 5 lbs. frequently and 10 lbs. occasionally, sit, stand, and walk 2 hours in an 8 hour day, use hand/arm controls occasionally, use foot/leg controls rarely, feel, finger, handle objects, reach, including overhead repetitively, never climb ladders, ropes or

---

[3] "[B]eginning on" appears to be a typographical error that should instead read "prior to." Given that the ALJ found Sawyers' impairments equaled Listing 1.02A as of October 20, 2009, pursuant to Step Three of the Five Step sequential analysis, it would make no sense to proceed to Step Four and assess his RFC subsequent to October 20, 2009. (R. 30). Finding 6 applies Sawyers' RFC, as determined in the quoted material, to a period beginning on June 23, 2006, which supports this conclusion. (R. 29). Additionally, findings 7, 9, and 10, which proceed from the quoted material, all state that they apply to the period prior to the October 20, 2009 onset date. *Id.*

scaffolds, occasionally climb ramps/stairs, balance, stoop and kneel, never crouch or crawl and is able to understand, remember and carry out simple, routine tasks, maintain attention and concentration for short periods, perform unskilled tasks, interact with supervisors, coworkers and the general public occasionally, can respond appropriately to changes in the workplace occasionally, and would be off task 20% of the 8 hour workday, not including normal breaks.

(R. 25). Based on this assessment of Sawyers' residual functional capacity (RFC), the ALJ determined Sawyers was unable to perform his past relevant work. (R. 29). Lastly, in Step Five, the ALJ considered Sawyers' age, education, work experience, and RFC, and determined—based exclusively on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.28 ("the Grids")—that "[p]rior to October 20, 2009, . . . there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. 29). Because the ALJ answered Step Five in the negative with regards to the period preceding October 20, 2009, the ALJ determined that Sawyers was not disabled during that period.

The ALJ went on to determine that "[b]eginning on October 20, 2009, the severity of [Sawyers'] impairments . . . medically equaled the criteria of section 1.02A of 20 CFR Part 404, Subpart P, Appendix 1," which describes major dysfunction of a major peripheral weight-bearing joint resulting in inability to ambulate effectively. (R. 30). Consequently, the ALJ concluded that Sawyers

"became disabled on [October 20, 2009] and has continued to be disabled through the date of this decision." *Id*.

## V. The Appeals Council's Decision

The Appeals Council reassessed Sawyers' disability onset date and determined, based on expert testimony, clinical data, and Sawyers' medical records, that as of April 24, 2008, Sawyers' impairments equaled the criteria of section 1.04A of 20 C.F.R. Subpart P, Appendix 1, which describes disorders of the spine resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression. (R. 6–7). Consequently, the Appeals Council concluded that Sawyers "became disabled as of April 24, 2008." (R. 7). At the outset of its decision, the Appeals Council stated that it "adopt[ed] the [ALJ's] findings or conclusions regarding whether [Sawyers was] disabled for the period prior to April 24, 2008." (R. 6). In spite of this statement, it then conducted its own assessment of Sawyers' condition prior to April 24, 2008 and concluded, relying on the Grids, that Sawyers was not disabled prior to April 24, 2008. (R. 7–8).

## VI. Analysis

The court turns now to Sawyers' contentions that the Appeals Council erred because (1) its finding regarding Sawyers' credibility was not based on substantial

evidence, (2) it relied exclusively on the Grids to determine that a significant number of jobs in the national economy existed that Sawyers could have performed prior to April 24, 2008,  and (3) it failed to reopen Sawyers' previous claim for Social Security Disability. Doc. 11 at 3–12. For the reasons stated below, the court finds that the Appeals Council properly assessed Sawyers' credibility, that the Appeals Council improperly relied exclusively on the Grids to determine if there were a significant number of jobs in the national economy that Sawyers could have performed prior to April 24, 2008, and that the court lacks jurisdiction to review the Appeals Council's decision not to reopen Sawyers' previous disability claim.

A.    *Sawyers' Credibility*

When assessing Sawyers' condition prior to April 24, 2008, the Appeals Council considered Sawyers' allegations that his impairments caused him severe pain. (R. 7). As a preliminary matter, Sawyers argues that the Appeals Council failed to apply the Eleventh Circuit "pain standard" when assessing these allegations. Doc. 11 at 8–9.[4] In making his contention, Sawyers ignores the

_____

[4] "In this circuit, 'a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms.' The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Pollard v. Astrue*, 867 F. Supp. 2d 1225, 1227 (N. D.

following sentence from the Appeals Council's opinion: "The claimant had a medically determined condition which could reasonably be expected to produce the symptoms alleged for the period at issue." (R. 7). This language tracks the first and third prongs of the 11th Circuit's three part pain standard. Therefore, Sawyers' argument that the Appeals Council failed to apply the standard is meritless. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002) (finding that "[a]lthough the ALJ does not cite or refer to the language of the three-part test . . . his findings and discussion indicate that the standard was applied.").

Sawyers contends next that the Appeals Council failed to articulate the reasons it found his pain testimony less than credible. Indeed, the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n. 4 (11th Cir. 2005). Moreover, the reasons must be supported by substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *see also Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745–46 (11th Cir. 2012).

Contrary to Sawyers' contentions, the Appeals Council did, in fact, articulate explicit reasons for failing to fully credit his testimony. It stated that "neither the opinions of [Sawyers'] attending physician's [sic] at the hospital

---

Ala. 2012) (quoting *Foote*, 67 F.3d at 1560 (11th Cir. 1995) (internal citations omitted).

[during an April 24, 2008 visit to the emergency room] or [Sawyers'] use of over the counter pain medications support his complaints of severe pain prior to April 24, 2008." (R. 7). The Appeals Council's decision regarding Sawyers' credibility also seems influenced by his failure to seek medical treatment for his alleged pain between a February 19, 2007 examination during which Sawyers "alleged severe pain in his right ankle and lumbar spine throughout the day," and April 24, 2008. *Id*. In other words, the record belies Sawyers' contention that the Appeals Council failed to articulate explicit reasons for not crediting Sawyers' testimony.

B. *Refusal to Reopen Sawyers' Previous Claim*

Sawyers contends next that the Appeals Council erred by failing to reopen his previous claim for Social Security disability. Doc. 11 at 3–5. For the reasons stated below, this court lacks jurisdiction to review that claim.

"As a general matter, district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a 'final decision' within the meaning of [42 U.S.C.] § 405(g)." *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 107–109 (1977)). Such refusals are "considered an interim decision," and are therefore "not reviewable under § 405 (g)." *Id*. (citing *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002); *Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996)).

However, "subject matter jurisdiction to review the Commissioner's decision not to reopen a prior application exists in two limited circumstances: (1) [if] a colorable constitutional claim is raised; or (2) [if] the decision is reconsidered to any extent at any administrative level." *Loudermilk*, 290 F.3d at 1268 (citing *Sherrod*, 74 F.3d at 245; *Jones v. Dep't of Health and Human Servs*., 941 F.2d 1529, 1533 (11th Cir. 1991)).

Prior to filing the claim that gave rise to the present matter, (R. 139–52), Sawyers applied for benefits on November 27, 2006, (R. 161). His application was denied on the grounds that he was capable of engaging in substantial gainful activity other than his past relevant work. *Id.* Sawyers did not appeal the denial, and did not reapply for benefits until May 6, 2008. *Id.*

Sawyers appears to argue that he has presented a colorable constitutional claim because he brought his original claim *pro se*, "he did not appeal his initial denial[,] there was no evidentiary hearing on the claim," and he suffers from "cognitive limitations–both longstanding and following the closed-head injury and coma sustained in his 1999 wreck." Doc. 11 at 4–5. The Eleventh Circuit has held that "a claimant raises a colorable constitutional claim" stemming from the Commissioner's refusal to reopen a previous application for benefits "if the following criteria are present: (1) he suffers from a *medically-documented mental*

*illness which serves as the basis for his disability claim*; (2) on his first application

he was without the assistance of counsel or other suitable representation; and (3)

he cannot assert a new claim for benefits because he now lacks insured status."

*Sherrod*, 74 F.3d at 246 (citing *Eichediak v. Heckler*, 750 F.2d 892, 894–95 (11th

Cir. 1985 (emphasis added). Although Sawyers proceeded *pro se* in his initial

application, doc. 11 at 4, he admits that he "does not claim to have an established

mental illness, *id.* at 5. Consequently, he has not presented a colorable

constitutional claim.[5]

Alternatively, Sawyers argues that "to the extent the ALJ included and

reviewed in his evaluation the evidence from the prior 2007 SSDI case, this should

be considered a *de facto* reopening." Doc. 11 at 5. A *de facto* reopening of a final

decision by the SSA occurs if the decision "is 'reconsidered on the merits to any

extent and at any administrative level." *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th

Cir. 1996) (quoting *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985)

---

[5] Sawyers' reliance on *Shrader v. Harris*, 631 F. 2d 297 (4th Cir. 1980), for his assertion that he has presented a colorable constitutional claim misses the mark because *Shrader* concerns judicial review of administrative res judicata decisions rather than denials of motions to reopen prior claims. *See id*. at 300. Moreover, *Shrader* does not support a finding that Sawyers has raised a constitutional claim because the *Shrader* court found that a constitutional claim exists when a claimant "presents prima facie proof that mental illness prevented him from understanding the procedure necessary to obtain an evidentiary hearing after the denial of his prior pro se claim." *Id*. at 302. Again, as stated above, Sawyers admits that he does not suffer from an established mental illness. Consequently, *Shrader* does not support his claim that he has established a colorable constitutional injury.

(finding that an ALJ's determination that the ALJs who adjudicated the claimant's two preceding disability claims had mischaracterized the claimant's educational level as 'limited' when it was actually 'marginal' was a reconsideration of the merits of the prior decisions with regards to the claimant's educational level); *see also Jones v. Barnhart*, 518 F. Supp. 2d 1327, 1337 (N.D. Ala. 2007) (finding that an ALJ's reevaluation of a claimant's literacy when the ALJ who adjudicated the claimant's previous disability claim had concluded the claimant was literate was a reconsideration of the issue of the claimant's literacy on the merits). At least one court has noted that "[w]hile Eleventh Circuit opinions have used broad language stating that jurisdiction exists if a case is 'reconsidered on the merits to any extent,' this exception to the rule set forth in *Califano* has not been applied broadly." *Johns v. Apfel*, No. CIV A 99-W-1404-N, 2000 WL 33287443, at *2 (M.D. Ala. Dec. 7, 2000) (quoting *Macon v. Sullivan*, 929 F.2d 1524, 1529 (11th Cir. 1991) (identifying only two instances in which the Eleventh Circuit found a *de facto* reopening had occurred, one of which transpired under novel circumstances)). The only reference to Sawyers' previous disability claim in either the ALJ or the Appeals Council's decisions is the Appeals Council's refusal to reopen the previous claim. (R. 8). There is nothing in either decision that can be construed as a reconsideration of the merits of Sawyers' disability claim, and

Sawyers does not argue otherwise. Therefore, neither the ALJ nor the Appeals Council's decisions constitute *de facto* reopenings of Sawyers' previous disability claim.

Sawyers argues that a *de facto* reopening occurred because "the ALJ included and reviewed in his evaluation the evidence from the prior 2007 SSDI case." Doc. 11 at 5. The Eleventh Circuit "has suggested that the Secretary's final decision will be deemed reopened if the ALJ does not apply res judicata and bases an ultimate determination on a review of the record in the prior application." *Wolfe*, 86 F.3d at 1079 (quoting *Passopulos v. Sullivan*, 976 F.2d 642, 645–46 (11th Cir. 1992)); *see also Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985). Even if the court were to follow this suggestion, it would not support a finding of a *de facto* reopening in the present case. Sawyers appears to argue that the Appeals Council's reliance on a report that was submitted as evidence in his prior claim supports finding a *de facto* reopening occurred. Doc 11 at 5. That report, prepared by Dr. Bonnie Atkinson,[6] assessed Sawyers' mental impairments

---

[6] The Commissioner admits that the Appeals Council improperly considered Dr. Atkinson's report. Doc. 12 at 13. A full, signed copy, of Dr. Atkinson's report does not appear in the record, as required by 20 C.F.R §§ 404.1519o(b) and 416.919o(b). Instead, it is incorporated into the record by reference in Dr. Robert Estock's report, (R. 372). Nonetheless, the court finds the Appeals Council's consideration of Dr. Atkinson's report to be harmless error because Dr. Estock's report also supports the Appeals Council's conclusion that Sawyers does not suffer from significant mental impairment. (R. 8). Therefore, the conclusion is supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (stating that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence'"). The court notes that Sawyers does not

and concluded that Sawyers was "not severely ill or mentally retarded." (R. 7). It is

not grounds for finding a *de facto* reopening occurred because the Appeals

Council also relied on other evidence to assess Sawyers' mental impairment, (R.

8), and because the ultimate determination that Sawyers was not disabled did not

hinge on Sawyers' mental impairment, *see Cherry*, 760 F.2d at 1189 (finding no

*de facto* reopening had occurred because "[t]he ultimate determination that [the

claimant] was not disabled . . . was not based on the record of the prior

proceeding").

Because Sawyers fails to meet either of the two exceptions to the rule that

district courts may not review the Commissioner's refusal to reopen a previous

disability claim, the court holds that it lacks jurisdiction to review Sawyers' claim

that the Appeals Council erred in refusing to reopen his prior disability case.

C.  *Reliance on the Grids*

Sawyers' final contention is that the Appeals Council erred by determining

he was not disabled prior to April 24, 2008 based on the Grids, which indicated

that there were a significant number of jobs in the national economy that he could

have performed prior to that date. Doc. 11 at 6–7. More specifically, he contends

that he is not subject to the Grids because of "his accounts of pain, his physical

---

dispute either Dr. Atkinson or Dr. Estock's findings regarding his mental impairment.

disabilities, and his cognitive limitations," and that the Appeals Council should "have been forced to develop of the vocational aspect of this matter" and "name [the] significant number of jobs in the national economy . . . specifically available to . . . Sawyers in this part of the nation."  Doc. 11 at 6.

In finding that Sawyers could perform jobs that existed in the national economy, the Appeals Council utilized the Grids rather than rely on the testimony of a vocational expert (VE). (R. 9);[7] *see also* 20 C.F.R. § 416.969. The agency regulations provide that "when all factors coincide with the criteria of a [Grid] rule, the existence of such jobs is established. However, the existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a [Grid] rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded." 20 C.F.R. Part 404, Subpart P, Appendix 2, section 200.00(b). *See also Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *Foote*, 67 F.3d at 1559) ( "[w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit

---

[7] The Appeals Council may have relied exclusively on the Grids because the VE who testified at Sawyers' hearing before the ALJ opined that no jobs existed that Sawyers could perform. (R. 61–64). At the hearing, the ALJ posed several hypotheticals to the VE, asking if an individual with certain limitations would be able to find employment. *Id*. The hypothetical limitations were clearly based on those alleged by Sawyers. The VE testified that the individual in each hypothetical would be unable to find employment. *Id.*

basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is the testimony of a VE"). "If nonexertional impairments exist, the ALJ may use [the Grids] as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably from a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson*, 284 F.3d at 1227 (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077–78 (11th Cir. 1996)).

The Appeals Council made two findings concerning Sawyers' RFC. First, it concluded that:

> [b]efore April 24, 2008, [Sawyers'] combination of impairments resulted in the following limitations on his ability to perform work-related activities: can lift and carry 10 pounds frequently and 10 pounds occasionally, stand and walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. In view of the above limitations, for the relevant period before April 24, 2008, the claimant had the residual function capacity to perform sedentary work.

(R. 9). This finding is in line with the SSA's definition of sedentary work:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour

workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-6p. The Appeals Council further concluded that:

> Prior to April 24, 2008, based on the claimant's age, education and work experience, if the claimant had the capacity to perform the full range of the sedentary exertional level, 20 CFR 404.1569 and 416.969 and Rule 201.28 in Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. *Although the claimant's exertional and nonexertional limitations did not allow him to perform the full range of the sedentary exertional level*, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform prior to April 24, 2008.

(R. 9) (emphasis added). The Appeals Council explicitly found that Sawyers' exertional and nonexertional limitations prevented him from performing a full range of sedentary work. *Id.* Nonetheless, it relied exclusively on the Grids to determine that there were a significant number of jobs available to him. Although the Appeals Council stated that it used the Grids as "a framework for decisionmaking," it failed to introduce any independent evidence supporting the existence of such jobs. *Id.* As stated above, the Appeals Council is required to introduce this kind of independent evidence if a claimant is unable to perform a full range of work at a given level due to exertional or nonexertional limitations. *Jones*, 190 F.3d at 1229. Moreover, even if the Appeals Council permissibly uses the Grids as a "framework to evaluate vocational factors," it still must introduce

independent evidence supporting the existence in the national economy of jobs the claimant is capable of performing. *Wilson*, 284 F.3d at 1227. Where, as here, the Appeals Council introduced no such independent evidence, it erred when it relied exclusively on the Grids to determine that a significant number of jobs in the national economy that Sawyers was capable of performing existed prior to April 24, 2008.

The Commissioner contends that the Appeals Council's "notation" indicating Sawyers' limitations prevented him from performing the full range of sedentary work prior to April 24, 2008 is a typographical error. Doc 12. at 9, n. 4. There is some evidence suggesting the Commissioner is correct. As the Commissioner notes in support of her argument, *id.*, prior to stating its findings regarding Sawyers' limitations and their relation to his work capacity, the Appeals Council found that "for the relevant period before April 24, 2008, the claimant had the residual functional capacity to perform sedentary work," (R. 9). Additionally, the Appeals Council presented its findings in the form of a numbered list. Both its finding regarding Sawyers' limitations and their relation to his work capacity and the preceding finding regarding his age, education, and past work are numbered as finding 7. *Id*. The duplication could indicate that there are other typographical errors in this portion of the decision.

After reviewing Social Security cases in which courts concluded that a commission adjudicator made a typographical error, the court has identified two trends. The first are cases in which a typographical error is clear on its face. *See Womack v. Colvin*, No. 8:12-cv-1316-T-TGW, 2013 WL 3878734, at *1 n. 3 (M.D. Fla. July 25, 2013) (noting that "[t]he law judge wrote in her decision 'lemon grader' instead of 'linen grader,' . . . [which was] obviously a typographical error"). The second are cases in which the typographical error is abundantly clear in light of the contents of the record. *See Roberson v. Astrue*, No. 3:11-cv-02824-AKK, 2012 WL 3628678, at *4 (N.D. Ala. Aug. 17, 2012) (finding that a single reference to the claimant's ability to perform light work was a typographical error because the record clearly indicated that the ALJ intended the claimant to perform sedentary work with exceptions); *Reed v. Astrue*, No. 09-0149-KD-N, 2009 WL 3571699 at *1 n. 1 (S.D. Ala. Oct. 26, 2009) (finding that because "records indicate that the [claimant's] initials are DJMR and that he uses his first name[,] [t]he Commissioner's reference to claimant as 'JMR' in the brief appears to be a typographical error"); *Moore v. Astrue*, No. 0:06-3514-HFF-BM, 2008 WL 216605, at *4–5 (D.S.C. Jan. 24, 2008) (stating that a claimant's depression was a "severe impairment" in the facts section of the decision was clearly a scrivener's error because the ALJ analyzed it as a non-severe impairment

"at length" in the remainder of the opinion); *cf. Douglas v. Astrue* (D.S.C. Sept. 3, 2010) (remanding case to the ALJ to clarify an inconsistency and noting that "[i]n nearly all of the Social Security cases in which a court has concluded that an ALJ made a mere typographical or scrivener's error, the ALJ's intent was more apparent").

This is not an instance in which a typographical error is apparent from the face of the document. The sentence in question makes sense as written. Going a step further, altering one or two words will not change its meaning to that which the Commissioner argues the ALJ must have intended.

Moreover, the court finds this is a situation similar to that faced by the *Douglas* court, in that the record does not contain sufficient indications of the Appeals Council's intent to conclude that its finding about the impact of Sawyers' exertional and nonexertional limitations on his work performance is a typographical error. As stated above, there are some indications that support the Commissioner's contention. But, the challenged finding is not inconsistent with the rest of the Appeals Council's decision. Although the Appeals Council stated earlier in its decision that "for the relevant period before April 24, 2008, [Sawyers] had the residual functional capacity to perform sedentary work," (R. 9), it did not explicitly state that Sawyers had the residual capacity to perform the full range of

sedentary work. This earlier finding also did not address Sawyers' ability to perform the nonexertional aspects of sedentary work, including "seeing, manipulation, and understanding, remembering, and carrying out simple instructions." *See* SSR 96-6p.

Moreover, to the extent that one of the nonexertional limitations preventing Sawyers from performing a full range of sedentary work prior to April 24, 2008, is his pain,[8] *see* doc. 11 at 6 (arguing that Sawyers' pain "put sedentary jobs out of his reach); *see also Foote*, 67 F.3d at 1559 (stating that "[p]ain is a nonexertional impairment), that finding does not contradict the Appeals Council's earlier conclusion that Sawyers' testimony regarding his pre-April 24, 2008 pain was unreliable. In reaching its conclusion regarding Sawyers' credibility, the Appeals Council applied the Eleventh Circuit's three part pain standard, then concluded that while Sawyers satisfied the pain standard, his testimony was unreliable. (R. 7). The purpose of that analysis, however, is to analyze a claimant's credibility in the context of "when a claimant attempts to *establish disability* through his or her own testimony of pain." *Foote*, 67 F.3d at 1560 (emphasis added). If a claimant satisfies the three part standard and the credibility analysis, he has achieved the

---

[8] The court notes that its task here is hampered by the Appeals Council's failure to identify the exertional and nonexertional limitations affecting Sawyers and how those limitations prevented him from performing a full range of sedentary work.

equivalent of satisfying a listing in Step Three of the SSA's five step analysis. It is perfectly plausible, though, that an adjudicator could refuse to credit a claimant's allegations that his pain was severe enough to render him disabled, while fully crediting the claimant's allegations that his pain was severe enough to prevent him from performing certain kinds of work.

Because the Appeals Council's finding that Sawyers is unable to perform a full range of sedentary work is not inconsistent with the rest of its decision, the court cannot say that the finding contains a typographical error.

For the reasons stated above, the Appeals Council impermissibly relied exclusively on the Grids to determine that a significant number of jobs in the national economy that Sawyers could perform existed prior to April 24, 2008. On remand, the ALJ should first clarify whether Sawyers was able to perform the full range of sedentary work. If the answer is no, the ALJ should identify the exertional and/or nonexertional limitations preventing Sawyers from performing the full range of sedentary work and their impact on his ability to work. The ALJ should then introduce independent evidence indicating whether a significant number of jobs existed that Sawyers could have performed, in spite of his limitations, prior to April 24, 2008.

## VI. Conclusion

Based on the foregoing, the court concludes that the Appeals Council failed

to apply the proper legal standards in determining that Sawyers was not disabled.

Therefore, the Commissioner's final decision is remanded for such proceedings as

are consistent with this opinion.

Done this 14th day of February, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE